In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-20-00300-CV**
**IN THE INTEREST OF K.K.**

**On Appeal from the County Court at Law No. 3**
**Montgomery County, Texas**
**Trial Cause No. 19-06-07713-CV**

## MEMORANDUM OPINION

B.V.[1] appeals the trial court's order terminating her parental rights. In her sole issue, B.V. challenges the legal and factual sufficiency supporting the trial court's finding that termination of her parental rights was in the best interest of K.K. For the reasons explained herein, we affirm the trial court's judgment terminating B.V.'s parental rights.

---

[1]To preserve the privacy of the parties, we refer to the parties and the child by their initials. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8.

## BACKGROUND

On June 5, 2019, the Department of Family and Protective Services ("the Department") filed a petition seeking to terminate B.V.'s parental rights to her son, K.K. The trial court conducted a bench trial on the Department's petition. The child's aunt, C.M., testified that her sister B.V. is K.K.'s mother. C.M. explained that five-year-old K.K. was placed in her care for eight or nine months after the Department filed its petition. When asked whether she knew why K.K. came into the Department's custody, C.M. testified, "I believe there was a question about his safety at the home . . . as far as his well-being. The home just wasn't very safe for him, and then there w[ere] also drug accusations." According to C.M., the home "wasn't very safe as far as the cleanliness. It was very dirty. You could tell that Dad, something was going on with him. . . . I just know that . . . I wouldn't deem that as a safe environment." C.M. testified that there were roaches in the home.

C.M. explained that she was initially unable to locate K.K. when B.V. was incarcerated, and she appeared at the first hearing to ensure that she could care for K.K., and K.K. went home with her after that hearing. C.M. testified that K.K. was initially physically aggressive, but while K.K. was living with her, he made progress and gained weight. According to C.M., K.K. lived with her until March or April 2020, when he went to live with C.M.'s husband's aunt, H.M. C.M. testified that

2

K.K. did not remain in her home because she was laid off due to the Covid-19 pandemic, and she was overwhelmed with trying to homeschool three children.

C.M. explained that her family still has a relationship with K.K., and she opined that termination of parental rights is in K.K.'s best interest "because my sister hasn't been very consistent. She lost her first child . . . to similar circumstances. . . . I just feel like he's in a better place now. Emotionally, financially, physically, he's being taken better care of where he's at now; and I hate to uproot him because he struggles with change." According to C.M., B.V. lost custody of her daughter when her daughter was eighteen months old. C.M. also testified that B.V. told her that there had been domestic violence between her and K.K.'s father. Additionally, C.M. testified that K.K.'s father told her that he was taking methamphetamines and heroin.

H.M. testified that she is currently caring for K.K., and K.K. has bonded with her other child. H.M. explained that she is related to K.K. by marriage. According to H.M., K.K. "has developed so much. He's learned manners, respect, boundaries. He's learned how to take attention. . . . We've got some structure here. He has responsibilities. He's very sweet." H.M. explained that K.K. is doing very well in school. H.M. testified that she and her husband wish to adopt K.K. and raise him as part of their family. H.M. testified that K.K. is accustomed to the structure and stability of her home and continuing in her home is in K.K.'s best interest. H.M. explained that she does not know B.V. or the child's father, and neither parent has

3

had any in-person or virtual visitation with K.K. According to H.M., since K.K. has been in her home, "he has never asked to see his mom, talk to his mom, [or asked] where his mom is or his dad." H.M. testified that both she and her husband are licensed as foster parents.

B.V. testified that she smoked methamphetamine in 2013 and again in 2016, when K.K. was approximately fourteen months old. B.V. explained that she had also smoked marijuana. According to B.V., she began using methamphetamines again in 2019, while K.K. was living with her, and she explained that she used methamphetamine consistently for approximately three months. B.V. testified that she stopped using methamphetamine when she was arrested in March of 2019, and the Department became involved. In addition, B.V. testified that she and K.K. stayed at a domestic violence women's shelter for over a year because K.K.'s father used to hit her. B.V. explained that K.K.'s father tended to become violent when he was "coming down" and did not have more drugs. According to B.V., when she was arrested, a friend of hers took care of K.K. B.V. testified that when she moved back to Conroe after living in the women's shelter, she resumed her relationship with K.K.'s father. B.V. explained that she thought K.K.'s father had changed, but he became violent with her again within "a couple of months[.]" B.V. testified that the violence occurred when K.K. was there, and K.K. would get mad at his father and tell him to stop. B.V. testified that she believed it was emotionally damaging for

4

K.K. to witness his father abusing her. According to B.V., she left K.K.'s father and then went back to him "[m]aybe four or five times."

In addition, B.V. testified that she was convicted of fraudulent use of identifying information, and she was incarcerated for seventeen months and then she received parole and had to go to a halfway house, where she resided at the time of trial. B.V. explained that she has not seen K.K. since May 2019. According to B.V., it is in K.K.'s best interest for her to retain her parental rights.

Department caseworker Rosalind McCray testified that she has handled the case involving K.K. since August 2019. McCray explained that when she initially contacted B.V. in September 2019, B.V. was incarcerated. McCray testified that she sent a letter to B.V., in which she told B.V. that she wanted B.V. to participate in the service plan as much as possible, and she sent a copy of the plan to B.V. According to McCray, B.V. simply wrote back and asked how K.K. was doing. McCray testified that she sent monthly letters to B.V. and that she sent pictures of K.K. McCray explained that B.V. did not complete any of the family service plan and has not requested visitation with K.K. since moving to the halfway house. McCray opined that termination of B.V.'s parental rights and appointing the Department as K.K.'s managing conservator is in K.K.'s best interest. According to McCray, naming B.V. or K.K.'s father as managing conservator would be harmful to K.K.

5

because the parents were using drugs, and K.K. is doing well in his current placement.

Bill Roe, the CASA advocate for K.K. since early August of 2019, testified that he has spent many hours monitoring how K.K. is doing, and he has observed K.K. in his current placement and has spoken with both B.V. and K.K.'s father. Roe testified that he recommends termination of parental rights and adoption of K.K. by H.M. and her husband. When asked the reason for his recommendation, Roe explained that B.V. has been incarcerated during most of the case, and he noted that her criminal history, drug use, the fact that she had given up another child, and her transitory living conditions make her a high-risk placement. According to Roe, H.M. and her husband have a family that "really has a support system for [K.K.]." Roe testified that K.K. has a good relationship with his foster sister, and his current placement offers him structure, discipline, and a caring environment. Roe explained that KK. has bonded with the family.

B.V.'s mother, K.B., testified that she currently has adopted B.V.'s daughter. K.B. explained that she is willing for K.K. to be placed with her. According to K.B., B.V. can parent K.K. K.B. testified that K.K.'s father used drugs and was physically abusive to B.V. K.B. also explained that B.V. has always lived with someone rather than living independently, and she has not consistently held a job. K.B. testified that she is concerned about B.V.'s ability to provide for K.K., and she believes K.K.'s

current placement is a good one. When asked whether it is in K.K.'s best interest to remain in his current placement, K.B. testified, "It's hard to say. Who knows what is [in] a child's best interest[?]"

B.V.'s friend L.R. testified that she has known B.V. since the summer of 2018, and they both have children. L.R. explained that she has seen B.V. with K.K. on numerous occasions, and she described B.V. as "very attentive to her son." L.R. testified that K.K.'s father was verbally abusive to B.V., and she described him as jealous and controlling. During cross-examination, L.R. testified that she was unaware of B.V.'s history of using drugs and being incarcerated.

Martha Wilkins, a supervisor for the Department, testified that she was an investigator for the Department in March 2019, and she received a report about K.K. due to concerns about drug use by B.V. and the father. Wilkins explained that she eventually visited B.V. in jail, and B.V. denied using drugs. According to Wilkins, K.K. was eventually removed due to concerns about drug use and B.V. being "in and out of jail[.]" Wilkins explained that neither parent took a drug test for the Department.

The trial court found that clear and convincing evidence supported four predicate statutory grounds for terminating B.V.'s parental rights and that termination of B.V.'s parental rights was in K.K.'s best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (N), (O), (2). B.V. appealed.

7

ANALYSIS

In her sole issue, B.V. argues that the evidence is legally and factually insufficient to demonstrate that termination of her parental rights is in K.K.'s best interest. *See id.* § 161.001(b)(2). When conducting a legal sufficiency review, we review "all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* If no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, the evidence is legally insufficient. *Id.*

In conducting a factual sufficiency review, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* We give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its ruling. *Id.* If, considering the entire record, the disputed evidence that a reasonable factfinder could not have

credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id*.

The decision to terminate parental rights must be supported by clear and convincing evidence, *i.e.*, "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In the Interest of J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). The movant must show that the parent committed one or more predicate acts or omissions and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1), (2); *see also In the Interest of J.L.*, 163 S.W.3d at 84. We will affirm a judgment if any of the grounds is supported by legally and factually sufficient evidence and the best-interest finding is also supported by legally and factually sufficient evidence. *In the Interest of C.A.C., Jr.*, No. 09-10-00477-CV, 2011 WL 1744139, at *1 (Tex. App.—Beaumont May 5, 2011, no pet.) (mem. op.).

Regarding the best-interest inquiry, we consider a non-exhaustive list of factors: (1) the desires of the child; (2) emotional and physical needs of the child now and in the future; (3) emotional and physical danger to the child now and in the future; (4) parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the best interest of the child; (6) plans for the child by these individuals or by the agency seeking custody; (7) stability of

9

the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see* Tex. Fam. Code Ann. § 263.307(b). No particular *Holley* factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in a child's best interest. *In the Interest of A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.). The best-interest determination may rely on direct or circumstantial evidence, subjective facts, and the totality of the evidence. *In the Interest of N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). "A parent's drug use, inability to provide a stable home, and failure to comply with a family service plan support a finding that termination is in the best interest of the child." *In the Interest of M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.). Evidence of a parent's continued drug use supports a finding that she poses a present and future risk of physical or emotional danger to the child and that termination would be in the child's best interest. *See In the Interest of S.N.*, 272 S.W.3d 45, 53 (Tex. App.—Waco 2008, no pet.). In addition, evidence that a parent exposed a child to domestic violence supports a trial court's finding that termination is in the child's best interest. *In the Interest of T.L.B., Jr.*, No. 01-16-00806-CV, 2017 WL 1019520, at *11 (Tex. App.—Houston [1st Dist.] Mar. 16, 2017, no pet.) (mem. op.).

With respect to the best interest of K.K., the trial court heard evidence that (1) B.V. used methamphetamine while K.K. was living with her, (2) B.V. and K.K. lived in a women's domestic violence shelter for over a year due to K.K.'s father's physical abuse of B.V., but B.V. nevertheless resumed the relationship, (3) B.V. believed seeing his father physically abuse her was emotionally damaging for K.K., (4) B.V. failed to complete her family service plan and did not visit K.K., (5) K.K. is having his physical, emotional, and financial needs met, is doing well in school, and has structure and discipline in his current placement, and (6) K.K. has bonded with H.M. and her family. The trial court also heard evidence that H.M. and her husband want to adopt K.K.

Prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest. *See* Tex. Fam. Code Ann. § 263.307(a). As the sole judge of the credibility of the witnesses and the weight to be given to their testimony, the trial court could reasonably conclude that termination of B.V.'s parental rights is in K.K.'s best interest. *See id*. §§ 161.001(b)(2), 263.307(a); *see also In the Interest of J.F.C.*, 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371-72; *In the Interest of T.L.B., Jr.*, 2017 WL 1019520, at *11; *In the Interest of S.N.*, 272 S.W.3d at 53; *In the Interest of M.R.*, 243 S.W.3d at 821.

We conclude that the Department established, by clear and convincing evidence, that termination of B.V.'s parental rights is in the best interest of K.K. *See*

Tex. Fam. Code Ann. § 161.001(b)(2); *In the Interest of C.A.C., Jr.*, 2011 WL 1744139, at *1. Accordingly, we overrule B.V.'s sole issue and affirm the trial court's judgment terminating B.V.'s parental rights.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on April 19, 2021
Opinion Delivered May 27, 2021

Before Golemon, C.J., Kreger and Johnson, JJ.